her to keep off; but she continued under her port helm notwithstanding, and the collision occurred.

J. C. Dodge, for libellant.

H. W. Paine and R. D. Smith, for claimants.

LOWELL, District Judge. There can be no doubt that it was the duty of the libellant's vessel with the wind aft, to avoid the close-hauled vessel; and that it was equally the duty of the latter to keep her course; and as she did not keep it, the only question is whether there was any thing in the circumstances which justified her departure from the usual rule. When a collision has become inevitable, it is the privilege of the ship which has the right of way to take any measure which may tend to lessen the force of the shock; nay more, it has sometimes been conceded to the infirmity of human nature than when the vessel that has the burden of avoiding the danger has come so near that to a reasonably firm and skilful navigator it appears that the collision is unavoidable, it shall be taken to have been so; and a mistake caused by the rashness of the other party shall not be imputed as a fault to him who has committed it. But this excuse must be made out clearly and satisfactorily, or the rules of navigation will become useless.

This is not such a case. The whole evidence, and indeed the candid statement of the master of the respondents' vessel by itself, tends to show that he did not wait long enough. He appears to have thought that the duty of changing devolved upon the person who first discovered the necessity for a change. It seems altogether probable that the change of course was made by each vessel at about the same time; and that this was in ample season to avoid the danger, if only one had made the change, is shown by the fact that both vessels had come entirely round before they struck; and by the opinion of some of the respondents' witnesses that even after their schooner had come into the wind, it was not too late for the Emma Bacon to have cleared her by starboarding her helm instead of keeping it to port. If they were within hailing distance before the change, that would have been the appropriate time to hail; but probably they were not so, and if not, they moved too soon.

There is another consideration, which, as it involves a point of nautical skill, I do not advance with so much confidence. It appears to me that the most proper course for the Emma Bacon was to go astern of the Higgins, as she undertook to do. If so, the master of the latter vessel in a doubtful case ought to have taken measures, if he took any, to co-operate in that movement, else he might be increasing the danger which he tried to avoid, as proved to be the case here.

For these reasons I hold that the agents of the respondents failed to perform their duty, and there must be a decree for the libellant.

## Case No. 11,769.

### In re RICHARDS.

[4 Ben. 303;[1] 4 N. B. R. 93 (Quarto, 25).]

District Court, S. D. New York. Aug., 1870.

BANKRUPTCY — EXAMINATION OF BANKRUPT — GAMING.

A bankrupt, under examination by the assignee, cannot refuse to answer questions as to his having lost money at gaming, on the ground that they will criminate or degrade him.

[In the matter of Andrew J. Richards, a bankrupt.]

By JAMES F. DWIGHT, Register.

[I, James F. Dwight, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me, the following questions arose pertinent to the said proceedings, and were stated and agreed to by the counsel for the opposing parties, to wit: Mr. James Matthews for the bankrupt, and Mr. William Russell, for William A. Hall, the assignee of the bankrupt. The following is a summary of the evidence upon the point to be submitted to the court. The bankrupt on his examination, at the instance of the assignee, testified among other things as follows: "Q. 299. Have you kept any account of moneys paid out by you during the year? A. No. Q. 300. Did you pay to Blake any money prior to the 24th December, 1869, for money borrowed by you of him? A. I do not remember. Q. 301. Did you pay to Blake any money other than his salary and the amount stated by you to have been paid on the 24th December? A. I may have paid him others, but I do not remember whether I did or not. Q. 302. Have you played cards, faro, or any other game of chance with Henry D. Blake during the year 1869? A. No. Q. 303. You have not? A. No, sir. Q. 304. Nor with Mr. Loomis? A. I decline to answer that question. Q. 305. (By the Register.) Do you understand that your answer to that question would criminate or degrade you? A. I think it would, and I decline to answer on that ground. Q. 306. (Mr. Russell.) Have you lost any money at games of chance during the year? A. I decline to answer that question on the same ground as I decline to answer the previous question."

[I think the assignee is entitled to the information, and that the questions should be answered by the bankrupt. Which questions and opinion are respectfully submitted to the judge for decision.][2]

James Matthews, for bankrupt.
William Russell, for assignee.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [From 4 N. B. R. 93 (Quarto, 25).]

BLATCHFORD, District Judge. I concur with the register in the view that the questions must be answered by the bankrupt.

## Case No. 11,770.

### In re RICHARDS.

[17 N. B. R. 562; [1] 10 Chi. Leg. News, 275.]

District Court, D. Massachusetts. April 17, 1878.

BANKRUPTCY—PROOF OF DEBT—WIFE AS CREDITOR.

A creditor, though the wife of the bankrupt, is a competent witness.

In bankruptcy.

B. L. M. Tower, for Mrs. Richards.
R. D. Smith, for assignee.

LOWELL, District Judge. Petition for proof of a debt by a wife against her husband's estate. The husband conveyed to his wife some property in Pemberton Square in 1869. A number of years after, he went into bankruptcy, and his wife sought to prove a claim against his estate for the income of the property as her separate income. A decision has been rendered in favor of the petitioner. In his opinion, the judge says an interesting question of evidence arises as preliminary to the decision of the merits. A statute of the United States declares that no witness shall be excluded in any civil action because he is a party or interested in the issue to be tried, with certain exceptions, and that in all other respects the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, in equity and admiralty. Rev. St. § 858. Under the last clause it has been held that a party to the action may be compelled to testify as a witness for the other party when the state laws so provide. In bankruptcy the creditor has always been a witness in his own case, to a greater or less extent, and in our practice, to all intents and purposes, I am of opinion that in bankruptcy a creditor, though a wife of the bankrupt, is a competent witness. The case is free from any indicia of fraud. The husband's separate property was very large, and his solvency undoubted when the deed to his wife was made. His business was somewhat fluctuating, but on the whole appeared to be prosperous, and so late as 1873 his share of the profits for the preceding year was $95,000. Upon the evidence I think it was the agreement of the parties from and after June, 1870, and not before, the separate income should remain her property, but I do not find those circumstances which would authorize me to add interest upon these items. The debt is admitted to proof for $20,300.

[1] [Reprinted from 17 N. B. R. 562, by permission.]

## Case No. 11,771.

RICHARDS, et al. v. CHESAPEAKE & O. R. CO.

[1 Hughes, 28; 4 Am. Law Rec. 469; 1 Law & Eq. Rep. 104.] [1]

Circuit Court, E. D. Virginia. Jan. 3, 1876.

RAILROAD COMPANIES—APPOINTMENT OF RECEIVER.—INTEREST OF CREDITORS—MORTGAGES.

1. Secured creditors cannot dictate who shall be appointed a receiver. He is the hand of the court, and the interest of creditors of every grade will be considered in making the appointment.

[Cited in Taylor v. Life Ass'n of America, 3 Fed. 469.]
[Cited in Jones v. McPhillips, 82 Ala. 102, 2 South. 471.]

2. A bill will be dismissed as to a subsequent mortgagee to the mortgagee in suit, he having been made a party to the litigation, and it being found that that hindered or defeated the suit.

3. Where trustees under a mortgage, of whom it is alleged in the bill for a foreclosure that they had refused to proceed to realize on the security, apply to come in and have been admitted as complainants in the bill, they must control the proceeding.

In equity. The Chesapeake and Ohio Railroad Company, a consolidated company, the component parts of which were the Virginia Central Railroad Company, the Blue Ridge Railroad Company, and the Covington and Ohio Railroad Company, became insolvent. There are secured and unsecured creditors of the road. The secured debts are: A mortgage, dated April 1st, 1850, of the Virginia Central Railroad Company of all its property, to the board of public works of Virginia for $100,000, to secure the payment of certain bonds of the company which are due and unpaid. A mortgage, dated June 2d, 1854, to James Lyons, William H. McFarland, and Hugh W. Fry, of the same company, of all its property, to secure the payment of other bonds of the company, amounting to $1,500,000, which are also due and unpaid. A mortgage, dated February 6th, 1866, of the same company, of all its property, to John B. Young and Robert R. Howison, to secure the bonds of the company for $300,000, with interest at eight per cent. per annum, which remain unpaid. A mortgage, dated October 1st, 1868, of all the railroads which form the Chesapeake and Ohio Railroad Company, to William Butler Duncan, Philo C. Calhoun, William Orton, and Matthew F. Maury (now deceased), to secure certain liabilities, in amount unascertained, of the Virginia Central Railroad Company. A mortgage, dated January 15th, 1870, executed to William Butler Duncan and Philo C. Calhoun, the trustees complainant, by the Chesapeake and Ohio Railroad Company, for $15,000,000, to secure the bonds

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 4 Am. Law Rec. 469, contains only a partial report.]